UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DANIEL A. MACLEAN,                          :

                                            :

            Plaintiff,                       :          OPINION AND ORDER

                                            :
        -v.-                                            16 Civ. 3270 (GWG)

                                            :
COMMISSIONER OF SOCIAL SECURITY,

                                            :

            Defendant.                       :
------------------------------------------------------------x
GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

        Plaintiff Daniel A. MacLean brings this action appealing the final decision of the Acting

Commissioner of Social Security ("Commissioner") finding MacLean ineligible for disability

insurance benefits.  The Commissioner has moved for judgment on the pleadings.[1]  For the

following reasons, the Commissioner's motion is granted.

I.  BACKGROUND

        A.  MacLean's Claim for Benefits and Procedural History

        MacLean filed his first claim for benefits on November 4, 2008, alleging a disability

onset date of July 2, 2006.  See Certified Administrative Record, filed Oct. 5, 2016 (Docket

# 14) ("R."), at 64.  An Administrative Law Judge ("ALJ") denied this claim on August 24,

2010, R. 61-70, and the Appeals Council denied MacLean's request for review on June 28, 2012,

R. 74-77.  His request for further review by a United States District Court was also denied.

See Maclean v. Colvin, 2014 WL 705262, at *2 (S.D.N.Y. Feb. 20, 2014).

_____

        [1]  See Notice of Motion, filed Oct. 3, 2016 (Docket # 12); Memorandum of Law in
Support of the Acting Commissioner's Motion for Judgment on the Pleadings, filed Oct. 3, 2016
(Docket # 13) ("Comm'r Mem."); Memorandum of Law in Opposition to Motion for Judgment
on the Pleadings, filed Nov. 1, 2016 (Docket # 15) ("Pl. Mem.").  "*__" refers to the pagination
assigned by the ECF system.

Several months after the Appeals Council denied his request for review, MacLean submitted a new application for disability insurance benefits on November 5, 2012, alleging a disability onset date of August 25, 2010. R. 144-45. This application was denied on December 21, 2012. R. 87-95. MacLean requested a hearing before an ALJ, R. 96-98, which was held on March 20, 2014, R. 31-60. The ALJ issued his decision on May 19, 2014, finding that MacLean was not disabled from his alleged onset date of August 25, 2010, through December 31, 2011, his date last insured. R. 15-30. MacLean requested that the Appeals Council review this decision, R. 10-11, but that request was denied on January 7, 2016, R. 4-9.

MacLean filed his complaint on April 29, 2016. Complaint, filed Apr. 29, 2016 (Docket # 2). Although MacLean was represented by an attorney in his proceedings before the Social Security Administration, he appears pro se in this Court.

B. The Administrative Record

The Commissioner's brief summarized the medical evidence contained in the administrative record. Comm'r Mem. at 4-11. MacLean does not contest the material facts in the Commissioner's summary of the evidence.[2] Having examined the administrative record, the Court adopts the Commissioner's summary as accurate and complete for the purposes of considering the claims at issue in this suit. We discuss the portions of the record relevant to this case's disposition in section III below.

---

[2] Plaintiff notes only that he went to "Access VR" in Middletown, New York, in March 2013, but that they stated "we have determined that there are no services we can provide you with that will benefit you in terms of employment." Pl. Mem. at *2-3; see also Letter from Suzanne Earle, Vocational Rehabilitation Counselor, Access VR, to Daniel A. MacLean, dated Mar. 19, 2013 (attached as Ex. 2 to Pl. Mem.) (indicating that Access VR could not take further action on MacLean's application for vocational rehabilitation services).

C.  The ALJ Hearing

At the hearing before the ALJ in 2014, MacLean testified that he lived with his wife, his two teenaged children, and his mother and father-in-law.  R. 36.  He said that in December 2011 he could drive his children to extracurricular activities such as bowling.  R. 36-37.  He would grocery shop for the household, prepare some of the meals, and change lightbulbs, but not clean inside the house or perform yard work.  R. 37-38.  He used a step ladder for a few days while fixing and painting a ceiling in August or September of 2011.  R. 38.  He used a cane on occasion prior to 2012 if he knew he "was going to go somewhere where there was a lot of walking . . . [o]r standing."  Id.  He had undergone four arthroscopic knee surgeries, and had just received clearance to have a knee replacement.  R. 38-39.  He had received injections of cortisone and Synvisc, and previously went through physical therapy.  R. 39.

In terms of work history, MacLean last worked in April 2006, and had tried to find other employment since then but could not perform the same type of work he did before.  Id.  He had previously worked as a janitor, as a truck driver, at two warehouses (ISI Holding and Monticello Energy Corp.), and at a retail store.  R. 39, 49-51.  He was the manager of the retail store before the company went bankrupt, but that job required that he remain on his feet.  R. 50.  He ran the warehouse of ISI Holding.  R. 51.  At Monticello Energy Corp. he helped with sales, ordered material, took care of technicians, and at times dug trenches with a shovel to run gas lines.  R. 54-55.  He frequently lifted a 50-pound bag of pool chemicals at that job, and was on his feet for 80 percent of the day.  R. 55-56.  He tried to find other office work in 2011 but no one would hire him.  R. 39-40.

In terms of symptoms, he testified that his knees would swell up and that "from mid-calf to the upper thigh [would] go numb," although his left knee was worse.  R. 40.  He feels the pain

"almost all day," and the pain had increased since 2011.  Id.  This numbness and pain distracted

him when "[w]atching a movie, helping [his] son with his homework," and doing similar

activities.  R. 42.  He used Votragen gel and another medication for his pain, but he suffered no

side effects from the treatment.  R. 40-41.  He can sit for 15-20 minutes at a time, but then has to

change position.  R. 41.  The pain also keeps him from sleeping more than three hours per night.

Id.

MacLean testified that he had tried to go to "Vesit" to be retrained, but that there was

nothing they could do for him.  R. 42-43.  He believed that they could not help him because there

were no jobs that would allow him to "get up and move and do things" in light of the amount of

time MacLean could sit before changing position.  R. 43.  He could stay in one general area for

15 to 20 minutes, but would then have to get up and walk around if sitting, or sit back down if

standing.  R. 44-45.

After MacLean testified, the ALJ heard from a vocational expert, Linda Stein.  R. 47.

Using her knowledge of the U.S. Department of Labor's Dictionary of Occupational Titles

("DOT"), she classified MacLean's previous work as a janitor as "cleaner, commercial or

institutional, but also known as a janitor," with a heavy exertional level; and his work as a

warehouse manager as "manager, distribution warehouse," exertional level sedentary, and

"manager, warehouse," exertional level light.  R. 51.

The ALJ inquired about a hypothetical person of MacLean's age, education, and work

experience who is able to perform the full range of sedentary work under the Social Security

Administration's rules and regulations, except that he must be "permitted to sit or stand every 15

minutes, alternating between sitting and standing every 15 minute interval[ ] throughout the

day"; should receive regularly scheduled breaks, meaning "15 minutes in the morning, 15 in the

afternoon, and a half hour to an hour for the day"; should have limited pushing, pulling, lifting, and carrying, "with no foot control operations"; could occasionally use ramps and stairs, but no ladders, ropes, or scaffolds; could perform occasional balancing and stooping, but no kneeling, crouching, or crawling; and should be allowed the use of a cane "while ambulating on uneven terrain or for prolonged ambulation" over one block, but with the ability to lift and carry with his non-cane hand up to "exertional limits". R. 51-52. Stein said that such a hypothetical person would be able to perform MacLean's past position of manager of a distribution warehouse, as defined by the DOT, which classifies that position as sedentary. R. 52. She also testified that other, unskilled positions exist in the national economy that such a hypothetical person could perform: envelope addresser, cargo in nature; charge-account clerk; and telephone order clerk, room service. R. 53. Stein said that if the person would be off task for 20 percent of the workday, in addition to the scheduled breaks, that would preclude all work. Id.

D. The ALJ's Decision

The ALJ found that MacLean was insured under the Social Security Act through December 31, 2011. R. 16. He found that MacLean did not work from his alleged onset date of August 25, 2010, through that date, and that he suffered from the severe impairments of arthroscopic surgeries of his left knee (in 1989-1990 and on April 19, 2011), "internal derangement of the left knee with chronic subluxation[3] of the patella-bilaterally," and obesity. R. 17-18. Although MacLean had a history of high blood pressure, the ALJ found that this condition was sufficiently controlled during the period in question that it "caused no more than

---

[3] A subluxation is "[a]n incomplete luxation or dislocation; though a relationship is altered, contact between joint surfaces remains." Subluxation, Stedman's Medical Dictionary 1716 (27th ed. 2000).

minimal limitations on [MacLean's] residual functional capacity [("RFC")]," and was not a severe impairment in and of itself.  R. 18.

The ALJ said that MacLean's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, in that they "are not attended by the clinical findings, signs and symptoms of an impairment listed under sections 1.02, or under any other section found in the Listing of Impairments."  Id.

The ALJ found that, despite MacLean's severe impairments, he retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the further limitations that he could only lift, carry, push, or pull up to 10 pounds occasionally, with no operation of foot controls; he must be permitted to alternate between sitting and standing at 15 minute intervals, with regularly scheduled breaks of 15 minutes in the morning and afternoon and a half-hour to one-hour break at midday; he could not climb ropes, ladders, or scaffolds, but could occasionally climb ramps or stairs; he could occasionally balance and stoop, but never kneel, crouch, or crawl; and that he must be allowed to use a cane for walking on uneven terrain and for walking farther than one block, but that the "collateral upper extremity," or the non-cane hand, could be used to lift or carry up to 10 pounds.  Id.  The ALJ noted that MacLean was 44 years old on his last day insured, has a GED, and has past relevant work experience as a janitor and as a warehouse manager.  R. 19.  The ALJ found that MacLean's allegations and symptoms regarding his osteoarthritis of the knees, high blood pressure, and obesity were credible and supported by medical evidence, but that "during the period at issue, the limitations stemming from the claimant's impairments and subjective complaints, such as pain and numbness[,] are not credible to be of the intensity and severity required to be disabling."  Id.

In making his determination that MacLean could perform sedentary work with certain

limitations, the ALJ relied on MRIs, x-rays, operative and post-operative records, and statements from treating sources. R. 19-21. The ALJ also relied on MacLean's testimony that during the period in question he could perform activities such as driving, shopping, preparing some meals, performing minor repairs, and performing ceiling repair using a step-ladder. R. 22. The ALJ noted that while MacLean had endured several surgeries to his left knee, he had no side effects from medications treating his knees, had full or almost full range of motion in both knees, had no gross instability of both knee joints, and negative McMurray sign,[4] Anterior drawer test,[5] and Lachman's sign.[6] R. 22.

As for MacLean's obesity, the ALJ observed that MacLean, who was 6'2" (R.166), reached 350 pounds before his surgery, but that by December 2011 he weighed 275 pounds. Id. The ALJ found that the record did not support a finding that MacLean's obesity "caused or contributed to a medical impairment" under the statute or that it limited his RFC further than what the ALJ had already found. Id. The ALJ concluded that MacLean's high blood pressure remained under control during the relevant period, and "ha[d] not caused end-organ damage or complications." Id.

Turning to the medical opinion evidence, the ALJ gave significant weight to the opinion of Dr. G Bhanusali, whom the ALJ recognized as MacLean's treating orthopedic surgeon for a

---

[4] The McMurray test is a rotation of the tibia on the femur to determine injury to the meniscal structures. A positive sign would mean a meniscal tear is likely. McMurray t., Stedman's Medical Dictionary 1805 (27th ed. 2000).

[5] A positive drawer sign would mean that MacLean had damage to the cruciate ligaments of his knee. See drawer s., Stedman's Medical Dictionary 1637 (27th ed. 2000).

[6] The Lachman test is used to "detect deficiency of the anterior cruciate ligament" in the knee. A positive sign would indicate damage to the ligament. See Lachman t., Stedman's Medical Dictionary 1804 (27th ed. 2000).

number of years.  R. 22-23.  The ALJ accepted Dr. Bhanusali's diagnosis of March 4, 2014, in
which the doctor said MacLean had a 50% disability since December 2011, caused by "internal
derangement of the left knee with chronic subluxation of patella both knees."  Id.  The ALJ gave
significant weight to Dr. Bhanusali's opinions that MacLean could sit, stand, and walk a total of
eight hours each with normal breaks; sit for 15-20 minutes, stand for one hour, and walk for 45
minutes at a stretch, but would have to change positions on a "regular basis" during the work
day; that he should use an assistive device to walk or stand, and that he could not engage in tasks
requiring pushing or pulling with the lower extremities.  R. 23.  The ALJ did not accept Dr.
Bhanusali's claim that MacLean could not stoop, based on the full range of motion in his knees
and the fact that activities of daily living MacLean regularly performed involved stooping.  Id.
The ALJ gave little weight to claims that MacLean is "100% disabled" or "totally disabled", as
he found they were inconsistent both with Dr. Bhanusali's opinions and other statements within
those sources.  R. 23-24.  The ALJ gave "some weight" to opinions that MacLean is 75%
disabled, as well as opinions from Dr. John Handango that he "'currently' has a marked
temporary disability," given that Dr. Handango's opinions were based on observations after the
last date MacLean was insured.  R. 24.

Based on MacLean's RFC, the ALJ found that he "was capable of performing past
relevant work as a warehouse manager, as generally performed in the economy."  Id.  The ALJ
relied on Stein's testimony that MacLean's past work fit into this category.  Id.  The ALJ noted
that, as performed by MacLean, his position as a warehouse manager required heavy exertion,
"given that among the requirements for such job, the claimant had to lift 50 pounds and stand
80% of the time."  Id.  However, as performed in the national economy and defined in the DOT,
the job required only sedentary exertion according to Stein.  Id.  The ALJ noted Stein's

testimony that, because MacLean performed this position from 2004-2006, the job of warehouse manager qualifies as past relevant work.  Id.  The ALJ thus concluded that MacLean was capable of performing his past work as it is generally performed in the national economy.  R. 24-25.

Additionally, the ALJ found that other jobs existed within the national economy that MacLean could perform.  R. 25.  Noting that MacLean was "a younger individual age 45-49" on the date last insured, has the equivalent of a high school education, and can communicate in English, the ALJ found that "applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferable job skills."  Id.  In the alternative, even though MacLean's RFC was less than sedentary, the ALJ found that there were nevertheless jobs in the national economy that MacLean could perform.  Id.  The ALJ noted the testimony of Stein when presented with a hypothetical person with MacLean's traits and RFC. Id.  She found occupations MacLean could perform even with his limitations, including addresser, charge-account clerk, and telephone order clerk.  R. 25-26.  Accordingly, the ALJ concluded that "through the date last insured, considering [MacLean's] age, education, and work experience, a finding of 'not disabled' is directed within the framework" of the Medical-Vocational Rules.  R. 26.

In light of these findings, the ALJ determined that MacLean was not disabled through December 31, 2011.

## II.  APPLICABLE LAW

### A.  Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp.

2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing

court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134

F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v.

Comm'r of Social Sec., 692 F.3d 118, 122 (2d Cir. 2012).

      B.  Standard Governing Evaluations of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person

will be found to be disabled only if it is determined that his "impairments are of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the

national economy." Id. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam).

Regulations issued pursuant to the Social Security Act set forth a five-step process that

the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 404.1520(a)(4); see

also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20

C.F.R. § 404.1520(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity,

the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 404.1520(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See id. § 404.1520(a)(4)(iii). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. § 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC permits the claimant to do other work. Id. § 404.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

## III.  DISCUSSION

MacLean appears to object to the ALJ's decision because he cannot return to his previous work; because the hypothetical question posed to the vocational expert at his hearing was improper; because he does not understand what the ALJ meant when "he stat[ed] I do not have impairments that meet medical requirements"; and because the swelling, tenderness, and pain in his knees was what qualified him as disabled. Pl. Mem. at *3-4. The Court addresses each of these objections by reviewing the ALJ's decision to ensure that it is supported by substantial evidence as required by 42 U.S.C. § 405(g).

We note initially that to receive disability insurance benefits, an applicant must be under a disability that began while he was insured. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.130-404.132, 404.315(a), 404.320(b). Here, the ALJ found that MacLean's last date insured was December 31, 2011, R. 15-16 — a finding supported by MacLean's earning records, R. 146-48. "It is the disability, and not just the impairment, that must have existed before the person's insured status expired." Kelly v. Chater, 108 F.3d 329, 1997 WL 85839, at *1 (2d Cir. 1997) (unpublished) (citing Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir. 1989)). Thus even if MacLean's condition has worsened since December 31, 2011, he still must demonstrate that his condition qualified him as disabled before that date in order to be eligible for benefits. See Perez v. Chater, 77 F.3d 41, 43, 47 (2d Cir. 1996) (affirming denial of benefits where claimant demonstrated she was disabled, but did not demonstrate that she became disabled prior to the expiration of her disability insured status).

A. Listed Impairments

The ALJ found that "the claimant's severe physical impairments are not attended by the clinical findings, signs and symptoms of an impairment listed under sections 1.02 or under any other section found in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1)." R. 18. Listing 1.02 refers to the "[m]ajor dysfunction of a joint[ ] (due to any cause)" including by anatomical deformities such as subluxation, with "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively," as defined by the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1.02. The regulations define the "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. pt. 404, subpt. P, app. 1.00(2)(b)(1). Generally, a person

13

who has to use "hand-held assistive device(s) that limit[ ] the functioning of both upper

extremities" cannot ambulate effectively.  Id.  Examples include

> the inability to walk without the use of a walker, two crutches or two canes, the
> inability to walk a block at a reasonable pace on rough or uneven surfaces, the
> inability to use standard public transportation, the inability to carry out routine
> ambulatory activities, such as shopping and banking, and the inability to climb a
> few steps at a reasonable pace with the use of a single hand rail.

Id. pt. 404, subpt. P, app. 1.00(2)(b)(2) (emphasis added).  A listed impairment (or its medical

equivalent) is severe enough to direct a finding of disabled, regardless the individual's age,

education, or work experience.  20 C.F.R. § 404.1525.

Substantial evidence supports the ALJ's finding that MacLean's impairment are not the

same or medically equivalent to the impairment listed in section 1.02.  MacLean testified that he

had to use a single cane to walk or stand for a considerable amount of time.  R. 38.  MacLean

also testified that he can perform basic tasks such as shopping (with the assistance of a cane).  R.

37.  His medical records confirm that he used this cane in 2011, but not a walker or multiple

crutches or canes.  See, e.g., R. 282.  Dr. Bhanusali also recommended that MacLean use a cane

or assistive device while walking or standing, but not two devices.  R. 540.  Thus the record does

not support a finding that MacLean's knee impairment was severe enough that he could not

ambulate effectively as defined by the Listings.  See, e.g., DiPalma v. Colvin, 951 F. Supp. 2d

555, 571-72 (S.D.N.Y. 2013) (claimant did not meet requirement of listing when he could carry

out activities of daily living and used only a single cane); Hollenbeck v. Comm'r of Soc. Sec.,

2013 WL 3712441, at *11 (N.D.N.Y. July 12, 2013) ("Plaintiff's use of a cane would interfere

with only one of his upper extremities and would not qualify under the definition [of 20 C.F.R.

pt 404, subpt P, app. 1.00(2)(b)(1)].").

Additionally, the ALJ considered whether MacLean's obesity "caused or contributed" to

a listed impairment, and found the record did not support such a finding. R. 22. Among the reasons for this finding was that MacLean underwent Lap-Band surgery, and had reached 275 pounds by December 2011. Id. At a time when MacLean weighed about 350 pounds, R. 331, Dr. Bhanusali had advised his patient to "[lose] body weight as . . . it puts [a] lot of pressure on both the knee joints." R. 332. By September 2011, Dr. Bhanusali noted that MacLean "[had] lost about 50 pound weight," and did not repeat his warning from February. R. 407. The Court finds that substantial evidence supports the ALJ's finding that MacLean's body weight did not "cause[ ] or contribute[ ] to a medical impairment found under the Listing of Impairments." R. 22.

B. RFC

MacLean suggests that the ALJ's RFC assessment was incorrect, and "did not give enough credit on what I could not do." Pl. Mem. at *3. The ALJ found that MacLean could perform sedentary work with certain restrictions. R. 18. Sedentary work requires that a person lift no more than 10 pounds at a time, and occasionally walk and stand but otherwise sit to perform the work, 20 C.F.R. § 404.1567(a). The ALJ included the following restrictions: (1) MacLean could not use any foot controls; (2) he must be permitted to alternate between sitting and standing at 15 minute intervals, with regular 15 minute breaks in the morning and afternoon and a one half-hour to one hour-long break at midday; (3) he must only occasionally climb ramps or stairs, but never ropes, ladders, or scaffolds; (4) he must only occasionally balance or stoop, but never crawl, crouch, or kneel; and (5) he must be allowed to use a cane to walk on uneven terrain or farther than one block, but he has free use of the non-cane hand to lift up to 10 pounds. R. 18.

In determining this RFC, the ALJ essentially followed Dr. Bhanusali's assessment of

MacLean's abilities. R. 23. Dr. Bhanusali, who was MacLean's treating physician for many years, opined that MacLean could sit, stand, and walk for a full work day "in combination," provided that "at his discretion [he] may get up to walk around;" that he could sit for at least 15 minutes, stand for at least an hour, and walk for 45 minutes continuously if he is allowed to shift positions; that he should not lift more than 15 pounds; that he could occasionally climb stairs; and that he should not crawl, crouch, or climb ladders. R. 540-43. Dr. Bhanusali also said that MacLean should not stoop, R. 541, but the ALJ discredited that statement based on MacLean's daily activities and because "[t]here are no notations of [MacLean] having limitations in range of movement of his back," R. 23. Thus, with the exception of stooping, the ALJ's RFC essentially accepted the limitations MacLean's treating physician proposed.

McLean additionally testified that he changes positions from sitting to standing, but can sit for 15 to 20 minute periods. R. 41, 44. He also said that, prior to 2012, he could drive short distances, do the food shopping, and change light bulbs. R. 37-38. All of this activity is consistent with the ALJ's RFC determination.

Some medical evidence, including evidence relating to a potential knee replacement, was not accepted by the ALJ because it related to the period after December 31, 2011, MacLean's date last insured. For example, Dr. Weiner's claims that MacLean has "[t]otal disability (100%)" are based on an evaluation from January 10, 2014. R. 530-31. The record does not indicate that Dr. Weiner treated MacLean before that date. Similarly, Dr. Alvarez's comments that a "total knee replacement" is necessary, R. 536, were offered in January 2014, with no suggestion that it was necessary in 2011, see R. 534-35. Even the first reports from Dr. Martin, in September 2010, indicated only a "mild to moderate disability," R. 492-93, with the next report dated August 28, 2013, R. 485. The ALJ could properly ignore this evidence as providing

no proof that MacLean was disabled before 2012.  See Perez, 77 F.3d at 47.

Thus, substantial evidence supports the ALJ's RFC determination.

C.  Credibility

In determining the RFC, the ALJ declined to credit some of MacLean's subjective complaints "concerning the intensity, persistence and limiting effects" of his impairments on credibility grounds.  R. 19.

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  Thus the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (summarizing and citing with approval a holding in Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)). Nonetheless, when discounting a claimant's credibility regarding his RFC, regulations impose some burden on the ALJ to explain his decision.  As the Second Circuit has stated:

> When determining a claimant's RFC, the ALJ is required to take the claimant's reports of . . . limitations into account, 20 C.F.R. § 416.929; see McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

Genier, 606 F.3d at 49.  To evaluate a claimant's assertion of a limitation, the ALJ must engage in a two-step process:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b). . . .  If the claimant does suffer

from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record.  Id.  The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination and treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."  20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

Id. (alterations in original).

The Social Security Administration has issued regulations relating to reports of pain or other symptoms affecting the ability to work by a claimant for disability benefits.  20 C.F.R. § 404.1529(c)(1).  These regulations provide, inter alia, that the Social Security Administration "will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements."  Id. § 404.1529(c)(2).  The regulations also provide that the Social Security Administration "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [his] statements and the rest of the evidence."  Id. § 404.1529(c)(4).  The factors to be considered include:

> (I) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [his] pain or other symptoms;
>
> (v) Treatment, other than medication [a claimant] receive[s] or ha[s] received for relief of [his] pain or other symptoms;

(vi) Any measure [a claimant] use[s] or ha[s] used to relieve [his] pain or other symptoms . . . ; and

(vii) Other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3)(I)-(vii).

Here, the ALJ found that MacLean suffered from medically determinable impairments to his knees, given his "history of multiple left knee surgeries, with residual pain, left knee numbness, and limitations of movement," as well as right knee pain "related to relying on it for ambulation — as a compensatory measure — given the chronic left knee impairments." R. 19-20. But at the second step, the ALJ found that MacLean's subjective symptoms were not credible to the extent they stated impairments beyond the ALJ's RFC assessment. R. 19. The ALJ noted MacLean's testimony that he could perform certain chores and activities at home ("includ[ing] driving, shopping, preparing some meals, and performing minor repairs around his home, that included ceiling repair by climbing on a step-ladder"); that he suffered no serious side effects from medications he used to control his symptoms; and that he could use a single cane to walk. R. 21-22; see also R. 36-38 (MacLean's hearing testimony). Additionally, x-rays of MacLean's right knee showed no significant physiological injury. R. 20; see also R. 327 (x-ray of right knee, showing structures are intact, with subluxation and moderate chondromalacia and patellofemoral degenerative change). Finally, as already noted, MacLean's own treating physician opined that MacLean's limitations did not prevent him from performing sedentary work. See generally R. 540-43. Thus, substantial evidence supports the ALJ's judgment regarding MacLean's credibility.

D. Ability to Work

Finally, MacLean objects to the ALJ's finding that he can still perform his past work as a

distribution warehouse manager as it is performed in the national economy.  See Pl. Mem. at *3.

The ALJ's decision stated: "[Stein] testified that although the claimant could not perform past

relevant work as a Warehouse Manager as performed by him, he could perform such job as

generally performed in the economy."  R. 24 (emphasis added).  The ALJ accepted Stein's

testimony that, because MacLean worked as a warehouse manager from 2004 to 2006, he had

sufficient on-the-job experience such that this position was considered "past relevant work."  Id.

In her testimony, Stein said that in the national economy, the job of "warehouse manager" is

classified as sedentary.  R. 51.

Social Security Administration regulations clarify that there are two potential definitions

of "past work" for purposes of determining disability: (1) "[t]he actual functional demands and

job duties of a particular past relevant job"; or (2) "[t]he functional demands and job duties of

the occupation as generally required by employers throughout the national economy."  SSR 82-

61, 1982 WL 31387 (1982), at *2; see also Sweet v. Astrue, 32 F. Supp. 3d 303, 319 (N.D.N.Y.

2012) ("A claimant is not disabled if she can perform her past relevant work, either as she

actually performed it, or as it is generally performed in the national economy.").  MacLean

cannot return to the warehouse positions as he performed them, which are almost certainly

greater than sedentary work.  R. 54-56.  However, the position of "warehouse manager" — as

performed in the general economy — is classified as "sedentary."  See R. 51 ("[M]anager,

distribution warehouse . . . . the exertional level is sedentary.").  Because the vocational expert

testified that, despite MacLean's limitations beyond the sedentary level, he could still perform

the job of distribution warehouse manager, R. 52, there is substantial evidence that he can

perform his previous work.  Thus, according to the regulations, MacLean is not disabled.

In any event, even if MacLean could not perform his past work, the ALJ properly found

that alternative jobs exist in the national economy that MacLean could perform. Where a claimant cannot perform his or her past work, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." Brault, 683 F.3d at 445. This burden is commonly met through the testimony of a vocational expert, particularly "where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks omitted) (quoting Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)). That expert's testimony — where not undermined by other evidence in the record — may be credited where given "on the basis of the expert's professional experience and clinical judgment." McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) (substantial evidence supported ALJ's reliance on vocational expert's testimony that a sufficient number of sedentary jobs exist for a person who must change from a sitting to a standing position at 15-30 minute intervals).

Here, the ALJ presented Stein with a hypothetical person with abilities matching MacLean's RFC, and asked her what jobs in the national economy such a person could perform. R. 51-53. She testified that such a person could still perform the jobs of envelope addresser, charge-account clerk, and telephone order clerk. R. 53. Stein's testimony that other jobs existed in the national economy that someone with MacLean's RFC could perform is thus substantial evidence supporting the ALJ's conclusion.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings dismissing this case (Docket # 12) is granted. The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: New York, New York
       September 14, 2017

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Daniel A. MacLean
17 Park Drive
Chester, NY 10918

Counsel by ECF